**<u>EXHIBIT A</u>**

Redacted Version of Court's 3/28/12
Memorandum Opinion to be posted to the public docket.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
                                  )
VENANCIO AGUASANTA ARIAS,         )
et al.,                           )
                                  )
     Plaintiffs,                  )
                                  )   Civil Action No. 01-1908 (RWR)
     v.                           )
                                  )   Consolidated with Civil Action
DYNCORP, et al.,                  )   No. 07-1042 (RWR) for case
                                  )   management and discovery
     Defendants.                  )   purposes
                                  )
                                  )   UNDER SEAL
                                  )
```

### MEMORANDUM OPINION

Plaintiffs, citizens and domiciliaries of Ecuador, brought an action against the defendants due to injuries allegedly arising from defendants' contract with the U.S. government to eradicate cocaine and heroin farms by spraying pesticides over Colombia.  The DynCorp defendants have moved for reconsideration of the Order compelling production of non-spray flight line data or, alternatively, for certification of an interlocutory appeal, arguing that the security risks of releasing the data outweigh the data's relevance to the plaintiffs' case.  The plaintiffs oppose the motion, asserting that Dyncorp failed to show that justice requires reconsideration or that certification of an interlocutory appeal is warranted.  Because justice does not require reconsideration, and the defendants have not identified substantial grounds for a difference of opinion on any

-2-

controlling question of law providing a basis to certify an
appeal, the defendants' motion will be denied.

BACKGROUND

Under an initiative known as "Plan Colombia," DOS hired the
defendants to "assist[] in illicit drug crop eradication by
spraying fumigants from airplanes onto cocaine and heroin poppy
plantations in Colombia." Arias v. Dyncorp ("Arias I"), 517 F.
Supp. 2d 221, 223 (D.D.C. 2007). The plaintiffs claim that
despite targeting Colombia, the aerial spraying unleashed one
"fumigant that is harmful to humans, animals, and plants other
than cocaine and opium poppies" onto the plaintiffs' homes and
lands in Ecuador. Arias I, 517 F. Supp. 2d at 223-24. Those
residing in the affected areas allegedly were forced to flee, id.
at 224, after the fumigations severely damaged them, their
"livestock, vegetation, and water[,]" Arias v. Dyncorp (Arias
II"), 738 F. Supp. 2d 46, 49 (D.D.C. 2010). The plaintiffs,
approximately 3,200 citizens and residents of Ecuador, brought
claims against the defendants under the Alien Tort Claims Act and
for various international and domestic common law torts. Arias
II, 738 F. Supp. 2d at 49.

The plaintiffs moved under Federal Rule of Civil Procedure
37 to compel production of, among other things, flight location
data of "operations [conducted] near the Ecuadorian border."
(Pls.' Second Mot. to Compel Discoverable Information ("Pls.'

-3-

Mot.") at 1, 10.)  They argued that such data would corroborate
eyewitness accounts of "Plan Colombia spray planes entering
Ecuador" and of "spraying along the border in instances where
DynCorp's data reflects no spraying."  (Id. at 11-12.)  They also
expected the flight line data to show "that DynCorp violated
Ecuadorian airspace[] in violation of international law[,]"
thereby "preclud[ing] DynCorp's government contractor defense."
(Id.)

The defendants opposed the motion to compel on several
grounds.  First, they reported having already "produced thousands
of [documents] . . . disclos[ing] information about every spray
flight in Southern Colombia between 1999 and 2008[,] including
latitude and longitude data, the amount of herbicide sprayed, any
problems encountered, and other pertinent facts regarding the
spray application."  (Defs.' Opp'n to Pls.' Mot. ("Defs.' Opp'n")
at 9.)  The opposition also reflected DOS's instruction "not to
produce the non-spray flight-line information" in light of the
"very real" "dangers to pilots in flight from and to the forward
operating bases[.]"  (Id. at 10.)  Finally, the defendants argued
that the requested flight lines "would be wholly unrelated to the
plaintiffs' legal claims against the DynCorp defendants - which
turn instead on the location of the spraying of herbicide that
allegedly injured plaintiffs and/or damaged their property."
(Id. at 12 (emphasis removed).)  The defendants concluded that,

-4-

at best, "such flight data . . . would directly contradict . . .
eyewitness accounts [by] demonstrat[ing] that while some
witnesses may have occasionally seen planes over Ecuador, the
planes were not in fact spraying herbicide."  (Id. at 11.)

Magistrate Judge Robinson denied the plaintiffs' motion to
compel flight line data for lack of relevance at a hearing held
on October 8, 2009.[1]  (Mot. Hr'g Tr., Oct. 8, 2009 a.m. at
34:23-25) ("[T]he Court finds that the plaintiffs have not
demonstrated that the information which is sought is
relevant.").)  She "largely" based her determination (id. at
34:20-22) upon the defendants' oral and written representations
that "[w]here these planes fly really is not relevant at all[;]
[i]t's only where they spray" (id. at 26:23-25).  At the hearing,
the defendants disputed having removed unintentional spray events
from the spray data it disclosed to the plaintiffs,[2] and

_____

[1] On October 14, 2009, Magistrate Judge Robinson entered a
minute order denying the plaintiffs' motion to compel "[f]or the
reasons set forth on the record at the [October 8, 2009]
hearing[.]"

[2] The plaintiffs argued that the aerial spraying reports
omit events that injured them by excluding missions during which
the spraying mechanism malfunctioned.  (Mot. Hr'g Tr., Oct. 8,
2009 a.m. at 5:13-18, 6:19-21.)  For example, the plaintiffs
cited the so-called "Lehr memorandum," a document stating that
the defendants' quality control ("QC") process involves removing
from spray reports "events such as stuck spray switch events,
sprayed chemical dumps, high altitude test spray events, spray
events that do not conform to spray jobs or paths, and any spray
sputter events less than 10 meters in length with zero flow rate
. . . to ensure that" only "intentional viable target spray
events" are reported.  (Id. at 7:4-11; see also id. at 23:13-15.)

-5-

reiterated that DOS owns the records and opposes their disclosure for security reasons.[3]  (See, e.g., id. at 19:9-15, 19:19-21, 25:22-25, 26:1-7.)  The defendants asserted, for example, that Plan Colombia "pilots are in constant danger" (id. at 21:11-12), and that the flight line data reveal pilots' "maneuvering" to evade detection of lines of ingress and egress.  (Id. at 26:4; see also id. at 25:25, 26:2-9.)

The plaintiffs filed objections to Magistrate Judge Robinson's ruling, describing two ways in which the records are relevant.  (Pls.' Obj'ns to the Magistrate Judge's Order on Pls.' Mot. ("Pls.' Obj'ns") at 6.)  First, ███████████████████

███████████████████████████████████████████

███████████████████████████████  (Id.)

Further, they argued that the flight data would demonstrate DynCorps's violation of Ecuadorian airspace and therefore of international law.  (Id.)

---

The defendants countered that they had "produced raw spray data before QC'ing, and post-QC spray data" (id. at 24:24-25, 23:20-23), and that it is impossible to excise such data until after it has been collected.  (Id. at 24:5-8.)

[3] During the hearing, the defendants' counsel stated that the defendants' contract with DOS governs the release of flight line records.  (Mot. Hr'g Tr., Oct. 8, 2009 a.m. at 30:5-10.)  Magistrate Judge Robinson then stated that "the Court has no authority to direct the State Department to do anything in this litigation[.]"  (Id. at 32:3-6.)

-6-

The defendants responded, arguing again that the flight
lines are irrelevant.  (Defs.' Opp'n to the Pls.' Obj'ns ("Defs.'
Response") at 14 ("[T]here is no nexus between their claims of
improper non-spray border crossings and their allegations of
damage caused by herbicide spraying and thus no nexus between the
requested non-spray flight lines and the legal claims or defenses
asserted in this case.").)  The defendants also repeated that DOS
must expressly approve releasing the data but had barred its
production to avoid risking pilots' "deaths or injuries[.]"  (<u>Id.</u>
at 2.)  And again, the defendants cited the security risks
attendant to releasing the data.  (<u>Id.</u> at 15.)  However, ███

███████████████████████████████████████████████████████████

███████████████████████████████████  (<u>id.</u> at 12), and newly
argued that the protective order was insufficient to protect the
data.  (<u>Id.</u> at 7.)

This court considered all of the above arguments before
sustaining the plaintiffs' objections to the magistrate judge's
ruling at a hearing held on April 30, 2010.  The court stated
that

> the flight location records could tend to
> corroborate or dispute accounts from the
> pilots or accounts from the victims or
> accounts from potential eyewitnesses about
> the spraying that's alleged here.  So, I do
> find that the information sought is relevant,
> and the objection then is sustained and the
> motion to compel those items that are the
> subject of the objection is granted. . . .
> [P]roduction [will] take place in accord with

-7-

> the terms of the protective order as might be
> needed. That order is in place in part to
> keep disclosure limited and to protect
> against DynCorp's expressed fear in its
> papers of sensitive information[] . . . being
> produced to narco-terrorists.

(Hr'g Tr., Apr. 30, 2010 a.m. at 7:4-15.)

The defendants now move for reconsideration of this court's
oral ruling compelling production of flight line data or, in the
alternative, petition for certification of an interlocutory
appeal under 28 U.S.C. § 1292(b). (Defs.' Mot. for
Reconsideration ("Defs.' Mot.") at 1.) The defendants argue that
the court clearly erred by not requiring the plaintiffs to make
the enhanced showing of relevance described in Friedman v. Bache
Halsey Stuart Shields, Inc., 738 F.2d 1336, 1344 (D.C. Cir. 1984)
("[C]ertain delineated categories of documents may contain
sensitive data which warrants a more considered and cautious
treatment.") (emphasis added), a FOIA case. (Def.'s Mot. at 6,
8.) To support the claim that the Protective Order does not
adequately shield the flight line data from disclosure, the
defendants cite a DOS official who said ███████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████ (Defs.' Mot., Ex. A, Decl. of Paul
O'Sullivan ("O'Sullivan Decl.") at 10.) The defendants' motion
for reconsideration otherwise recapitulates some of the same
arguments previously presented to the magistrate judge and this

-8-

court.  (See, e.g., id. at 2, 5, 9-12; compare, e.g., Defs.'

Opp'n at 10, 12; Mot. Hr'g Tr., Oct. 8, 2009 a.m. at 19:19-21,

21:11-12, 25:22-25; Defs.' Response at 2-3, 7, 14-15.)

The plaintiffs opposed the motion as identifying no new law,

new evidence, or clear error that would justify disturbing the

court's ruling.  (Pls.' Opp'n to Defs.' Mot. ("Pls.' Opp'n") at

4-5.)  They maintain that the data are relevant (id. at 7-8),

dispute that the newly-raised Friedman theory is apposite (id. at

5-6), and challenge as inadequate the defendants' request for an

interlocutory appeal (id. at 16-21).

DISCUSSION

I.   RECONSIDERATION

Courts may reconsider any interlocutory decision such as a

discovery ruling, see, e.g., Abdulmalik v. Obama, 802 F. Supp. 2d

1, 5-6 (D.D.C. 2011) (denying motion to reconsider order denying

leave to obtain additional discovery), "at any time before the

entry of a judgment adjudicating . . . all the parties' rights

and liabilities."  Fed. R. Civ. P. 54(b).  See also DL v. D.C.,

274 F.R.D. 320, 328 (D.D.C. 2011) (denying motion to reconsider

discovery ruling under Rule 54(b)); Husayn v. Gates, 588 F. Supp.

2d 7 (D.D.C. 2008) (granting motion to reconsider discovery

ruling under Rule 54(b)).  "[R]elief upon reconsideration . . .

is available 'as justice requires.'"  Johnson-Parks v. D.C.

Chartered Health Plan, 806 F. Supp. 2d 267,  268 (D.D.C. 2011)

(internal quotation marks and citation omitted).  Under this
standard, the court considers "whether [it] patently
misunderstood the parties, made a decision beyond the adversarial
issues presented, made an error in failing to consider
controlling decisions or data, or whether a controlling or
significant change in the law has occurred."  Negley v. FBI,
Civil Action No. 03-2126 (GK), 2011 WL 3836461, at *2 (D.D.C.
Aug. 31, 2011) (internal quotation marks and citation omitted).
"However, in order to promote finality, predictability, and
economy of judicial resources, as a rule [a] court should be
loathe to [revisit its own prior decisions] in the absence of
extraordinary circumstances such as where the initial decision
was clearly erroneous and would work a manifest injustice."
Pueschel v. Nat'l Air Traffic Controllers' Ass'n, 606 F. Supp. 2d
82, 85 (D.D.C. 2009) (alteration in original) (internal quotation
marks and citation omitted).  Nor is a motion for reconsideration
to be used as an opportunity to rehash arguments previously made
and rejected.  Michilin Prosperity Co. v. Fellowes Mfg. Co.,
Civil Action No. 04-1025 (RWR), 2006 WL 3208668, at *1 n.1
(D.D.C. Nov. 7, 2006) (stating that the plaintiff's "rehashed
arguments . . . provide no justification for reconsidering [an
earlier] [o]pinion").  "[W]here litigants have once battled for
the court's decision, they should [not] be . . . permitted[ ] to
battle for it again."  Pueschel, 606 F. Supp. 2d at 85

(alterations in original) (internal quotation marks and citation omitted).

The defendants have not shown that the April 30, 2010 ruling resulted from any misunderstanding, or exceeded the scope of the parties' arguments, or failed to consider information presented. See Negley, 2011 WL 3836461, at *2.   To the contrary, the transcript reflects the court's consideration of the relevance of the flight line data and the security risks the defendants have repeatedly articulated and rehash here.[4] (Hr'g Tr., Apr. 30, 2010 a.m. at 6:19-25, 7:1-15; see also Defs.' Opp'n at 10; Defs.' Response at 2, 15; Mot. Hr'g Tr., Oct. 8, 2009 a.m. at 19:9-15, 26:1-7.)   In light of these risks, the ruling ordered production but required that it comply with the Protective Order.   (Hr'g Tr., Apr. 30, 2010 a.m. at 7:11-12.)   See also Friedman, 738 F.2d at 1344 ("No great outcry has arisen that information thus restricted has been leaked, or put to improper uses, by attorneys who are sworn officers of the court.   The potential harm to the government is minimal when appropriate precautions are taken.") (internal quotation marks and citation omitted).[5]   The court

---

[4] The defendants' insistence that the non-spray flight line data is irrelevant since it would only contradict eyewitness testimony that spraying occurred misses the point.   The data could show that spray planes were in locations the eyewitnesses described.   Whom to believe regarding whether spraying occurred is a quintessential jury question.

[5] It bears noting that the plaintiffs have offered to supplement the protective order by complying with additional

evaluated and balanced the competing interests before reaching
its conclusion.

The defendants' motion nonetheless reargues the risks posed
by producing the data.  There is no dispute that groups like FARC
pose serious dangers to pilots in the eradication spraying
program.  But the shortcoming of the motion lies beyond that.
The motion begins and ends with the assumption that FARC and
narco-terrorists will receive disclosed non-spray flight line
data.  The only support offered for the assumption is pure
speculation -- e.g., one sentence of one paragraph of a DOS
official's declaration that ███████████████████████████████

████████████████████████████████████████████████████████

(O'Sullivan Decl. at 10); one sentence of a letter from another
DOS official that dissemination of flight line data could aid the
cause of international terrorist organizations (Defs.' Mot., Ex.
B at 8); one sentence of one paragraph of a pilot's declaration
that he believes that releasing the data will increase the risk
of enemies getting the data (Defs.' Reply, Ex. A ¶ 11).  This
speculation does nothing to undermine the court's earlier
assessments.

Neither have the defendants identified any "controlling or
significant" legal changes warranting reconsideration, Negley,

---

security measures to prevent release of the data to unintended
parties.  (See Pls.' Opp'n at 9-10.)

2011 WL 3836461, at *2, as their lead case, <u>Friedman</u>, was decided

years ago in 1984.  A motion to reconsider is not "a vehicle for

presenting theories or arguments that could have been advanced

earlier."  <u>Clay v. D.C.</u>, Civil Action No. 03-466 (SBC), 2005 WL

1378768, at *1 (D.D.C. June 6, 2005).  Here, the defendants'

belated assertion of the plaintiffs' failure to meet a heightened

standard of relevance could -- and should -- have been squarely

presented to the court before.[6]  (<u>Compare</u> Defs.' Reply at 2 n.1

---

[6] Even if the argument were timely, it is not clear that
<u>Friedman</u> requires an enhanced showing here.  To begin with, the
<u>Friedman</u> court distinguished between FOIA cases and discovery
disputes.  It observed that "information unavailable under the
FOIA is not necessarily unavailable through discovery. . . .
[T]he district court <u>may</u> consider [a FOIA exemption] as
congressional underscoring of the government's interest in
protecting sensitive investigatory information."  <u>Friedman</u>, 738
F.2d at 1344-45 (emphasis added).  <u>Friedman</u> added:

> In the FOIA context, the requesting party's need for
> the information is irrelevant; the most urgent need
> will not overcome an applicable FOIA exemption.  In the
> discovery context, when qualified privilege is properly
> raised, the litigant's need is a key factor.  Whether
> the information is disclosed depends on the relative
> weight of the claimant's need and the government's
> interest in confidentiality.

<u>Id.</u> at 1344.  Given these differences, even "information in
government documents [subject to FOIA] exempt[ions is] . . . not
automatically . . . privileged within the meaning of Rule
26(b)(1) and thus not discoverable in civil litigation."  <u>Id.</u>
The <u>Friedman</u> court therefore concluded that "[i]t is unsound to
equate the FOIA exemptions and similar discovery privileges."
<u>Id.</u>  Further, though statutory privileges "may have some
application to discovery[,]" <u>id.</u>, the defendants have not
asserted any such privilege here.  In any event, none of the
defendants' citations to FOIA caselaw constitutes new law;
rather, each is merely newly advanced.  (<u>See</u> Defs.' Mot. at 8-9.)
The same is true of various DOS employees's declarations which,

-13-

(citing the defendants' earlier arguments in favor of only a
"particularized" showing of relevance, and DOS's earlier letter
implying that one need show only a "particular or substantial
need" for the data to "justify the dangers inherent in the
production of these materials").)   Accordingly, no error infected
the decision to compel the production of flight line data on the
basis of a satisfactory showing of relevance, and no manifest
injustice will result from compliance.  (See Defs.' Mot., Ex. B,
Att. 2 at 2 (reflecting DOS vow to limit what it asks DynCorp to
redact, including information that is irrelevant to this
litigation).)   The defendants have not established that justice
requires reconsideration.

II.  INTERLOCUTORY APPEAL

     The defendants request that any order denying
reconsideration be stayed and that the issue of "how courts
should balance . . . national security concerns against judicial
rules of discovery" be certified under 28 U.S.C. § 1292(b) for
interlocutory review.  (Defs.' Mot. at 15.)   Such relief is
granted rarely and only under "exceptional circumstances."  Al
Maqaleh v. Gates, 620 F. Supp. 2d 51, 54 (D.D.C. 2009).   The
petitioner "must meet a high standard to overcome the strong

_____

as newly advanced rather than newly available evidence, are not
proper bases for reconsideration.  (See, e.g., Defs.' Mot., Ex.
C, Benita Williams Decl.; Defs.' Notice of Filing of Supp'l
Decl., Ex. A, Margaret Grafeld Decl.)

-14-

congressional policy against piecemeal reviews, and against
obstructing or impeding an ongoing judicial proceeding by
interlocutory appeals." Graham v. Mukasey, 608 F. Supp. 2d 56,
57 (D.D.C. 2009) (internal quotation marks and citation omitted).
To grant interlocutory review, the "district court must certify
that the order [at issue] involves a controlling question of law
as to which there is substantial ground for difference of opinion
and that an immediate appeal from the order may materially
advance the ultimate termination of the litigation." Nat'l Cmty.
Reinvestment Coal. v. Accredited Home Lenders Holding Co., 597 F.
Supp. 2d 120, 121 (D.D.C. 2009) (internal quotation marks and
citation omitted).  A "question of law is an abstract legal issue
or what might be called one of 'pure' law, matters the court of
appeals can decide quickly and cleanly without having to study
the record." Elkins v. D.C., 685 F. Supp. 2d 1, 8 n.2 (D.D.C.
2010) (some internal quotation marks and citation omitted).  In
turn, a controlling question of law "would require reversal if
decided incorrectly or . . . could materially affect the course
of litigation with resulting savings of the court's or the
parties' resources." Feinman v. FBI, Civil Action No. 09-2047
(ESH), 2010 WL 962188, at *1 (D.D.C. Mar. 15, 2010).  The
defendants must "do more than show continued [or even vehement]
disagreement with the trial court's decision." Graham, 608 F.
Supp. 2d at 57 (citation omitted).  They must articulate "an

exceptional circumstance . . . which warrants an interlocutory appeal." <u>Fed. Election Comm'n v. Club for Growth, Inc.</u>, Civil Action No. 05-1851 (RMU), 2006 WL 2919004, at *3 (D.D.C. Oct. 10, 2006).

The defendants have not identified any "split in this district or this circuit regarding any controlling issue of law in this case[.]" <u>Graham</u>, 608 F. Supp. 2d at 57; <u>see also</u> <u>Nat'l Cmty.</u>, 597 F. Supp. 2d at 122. (<u>Compare</u> Defs.' Mot. at 8 with Pls.' Opp'n at 19.) Such a split might reflect substantial ground for a difference of opinion concerning balancing a party's interest in relevant discovery with the government's interest in confidentiality. The defendants' argument that appealing the ruling denying reconsideration "may materially advance the ultimate termination of the litigation" is similarly unavailing. (<u>See</u> Defs.' Mot. at 15-16.) Any appeal will almost certainly prolong both the discovery period and the resolution of the litigation. (<u>See</u> Pls.' Opp'n at 20-21.) <u>See also</u> <u>Chennareddy v. Dodaro</u>, Civil Action No. 87-3538 (EGS), 2010 WL 3025164, at *2 (D.D.C. July 22, 2010) ("Allowing immediate appeal . . . would not materially advance the ultimate termination of the litigation. In fact, the opposite is more likely true: allowing an immediate appeal of this discovery issue would likely only cause further delay to this case that has already been pending for over twenty years.") "[T]hough interesting, the

-16-

[defendants'] arguments do not satisfy the[ir] heavy burden" to demonstrate exceptional circumstances warranting immediate appeal.  Fed. Election Comm'n, 2006 WL 2919004, at *3.

III. SUMMARY JUDGMENT

    "The D.C. Circuit has stated that 'decision by summary judgment is disfavored when additional development of facts might illuminate the issues of law requiring decision.'"  Bynum v. D.C., 215 F.R.D. 1, 2 (D.D.C. 2003) (quoting Nixon v. Freeman, 670 F.2d 346, 362 (D.C. Cir. 1982)).  For example, in McWay v. LaHood, 269 F.R.D. 35, 36 (D.D.C. 2010), the court denied without prejudice the defendant's motion for summary judgment, and denied as moot the plaintiffs' request to strike certain exhibits filed in support of the motion, before "discovery [wa]s complete, and because the . . . plaintiff [wa]s entitled to obtain [outstanding] discovery."  It would be improper to entertain prematurely any motion for summary judgment to which undisclosed discovery applies.  See Breen v. Peters, 474 F. Supp. 2d 1, 7 (D.D.C. 2007) ("Often, summary judgment motions are premature until all discovery has been completed.") (internal quotation marks, alteration, and citation omitted).  Here, as in McWay, certain discovery is yet to be disclosed.

    Further, "[i]t is well established that district courts enjoy broad discretion when deciding [matters of] case management[.]"  Florida v. United States, Civil Action No.

-17-

11-1428 (CKK-MG-ESH), 2011 WL 5114811, at *3 (D.D.C. Oct. 28,
2011) (citing In re Vitamins Antitrust Class Actions, 327 F.3d
1207, 1210 (D.C. Cir. 2003)); accord Mica Saint-Jean v. D.C. Pub.
Sch. Div. of Transp., Civil Action No. 08-1769 (D.D.C. May 11,
2009) (order) ("A district court has wide discretion over its
case-management decisions[.]").)  Since the defendants' pending
dispositive motions all seek summary judgment on some or all of
the plaintiffs' claims, the motions will be construed as an
omnibus motion for summary judgment spread on the docket, and all
except the earliest-filed will be administratively closed.

CONCLUSION

The defendants have failed to demonstrate that justice
requires reconsideration of the April 30, 2010 Order or that an
interlocutory appeal is warranted.  A separate order accompanies
this memorandum opinion.

SIGNED this 28th day of March, 2012.

_____
RICHARD W. ROBERTS
United States District Judge