UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ) | |
| VENANCIO AGUASANTA ARIAS, ) | **REDACTED VERSION** |
| <u>et al.</u>, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 01-1908 (RWR) |
| v. ) | |
| ) | Consolidated with Civil Action |
| DYNCORP, <u>et al.</u>, ) | No. 07-1042 (RWR) for case |
| ) | management and discovery |
| Defendants. ) | purposes |
| ) | |
| ) | |
| ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs, approximately 2,000 Ecuadorian citizens and
domiciliaries, bring common law negligence and other tort claims
against the DynCorp defendants, alleging personal injury and
property damage caused by the defendants spraying herbicides over
the plaintiffs' lands in Ecuador.  The defendants have moved for
summary judgment, arguing that the plaintiffs have proffered no
expert testimony to show the dose and duration of the plaintiffs'
exposure to any herbicides or to show that such exposure caused
the injury and damage.  The plaintiffs counter that expert
testimony is unnecessary where, as here, hundreds of eyewitnesses
have testified that their exposure to the herbicides caused them
to suffer symptoms that are consistent with the herbicide's known
effects, and where an expert has corroborated certain of those
claims.  Because the plaintiffs failed to raise a genuine issue
of material fact as to any injury to the plaintiffs' crops,

livestock, and fish, but met their burden regarding general and specific causation as to their personal injuries, summary judgment will be granted in part and denied in part.

BACKGROUND

The Department of State ("DOS") hired the defendants to help eradicate Colombian cocaine and heroin poppy plantations.  Arias v. DynCorp, 856 F. Supp. 2d 46, 49 (D.D.C. 2012).  To carry out the mission, which was known as "Plan Colombia," the defendants' planes sprayed aerial fumigants over Colombian drug farms.  However, the planes allegedly also unleashed a "fumigant that is harmful to humans, animals, and plants other than cocaine and opium poppies" onto the plaintiffs' lands in Ecuador.  Id. (internal quotation marks omitted).  These fumigations are alleged to have severely damaged the plaintiffs and their property and, as a result, forced those residing in the affected areas to flee.  Id.  The plaintiffs now bring common law tort claims and claims under the Alien Tort Claims Act against the defendants, all arising from injuries the fumigants allegedly caused.

The plaintiffs proffer as an expert "Dr. Michael Wolfson, an occupational and environmental health specialist[.]"  Pls.' Opp'n to DynCorp's Mot. for Summ. J. Based on the Lack of Necessary Expert Test. ("Pls.' Opp'n") at 11.  In his deposition, Wolfson "testified that Plaintiffs['] symptoms were consistent with those

experienced after exposure to Glyphosate-containing herbicides"
and that no "precise dose information" was necessary to reach
that conclusion.  Id.  He also "testified that to a reasonable
degree of medical certainty, Plaintiffs' exposure to the Plan
Colombia Glyphosate-containing herbicides ("GBH") sprayed on or
near the Plaintiffs' homes and farms . . . caused their symptoms
and increased their risk of developing certain cancers and non-
Hodgkins Lymphoma."   Id. at 34-35; see also Pls.' Opp'n, Ex. 1,
Michael Wolfson Dep. ("Wolfson Dep.") at 90:25, 91:1-6.  However,
Wolfson offered no expert opinion as to the specific amounts of
herbicide-laden spray that may have drifted into Ecuador as a
result of Plan Colombia, or the degree or duration of individual
plaintiffs' exposure to such drift.  Wolfson Dep. at 7:22-25,
8:1-6.  Neither did Wolfson opine on the plaintiffs' claims of
injury to their crops, animals, and fish.  Defs.' Mot. for Summ.
J. Based on the Lack of Expert Test. ("Defs.' Mot.") at 6; see
also Wolfson Dep. at 8:12-14, 9:9-12.

     The test plaintiffs also have supplied "[eyewitness]
accounts of their exposure to the spray and the symptoms they
developed immediately or soon after the spraying[.]"  Pls.' Opp'n
at 16; see also id. at 34.  For example, within two hours of
having observed aerial spraying, Martina Bosquez Garcia and Edgar
Balcazar Bravo experienced itching and burning sensations on the
skin and in the nose and throat.  Pls.' Opp'n, Ex. 1, Martina

-4-

Bosquez Garcia Dep. at 38:3-17; id. at Ex. 1, Edgar Balcazar
Bravo Dep. at 42:4-10.  All in all, between nine and eleven of
the twenty test plaintiffs reported having experienced similar
symptoms in the immediate aftermath of spray events.  Pls.'
Opp'n, Pls.' Stmt. of Material Facts, Pls.' Stmt. of Disputed
Material Facts ("Pls.' SDMF") ¶ 4.  To bolster these eyewitness
accounts, the plaintiffs cite studies and evaluations conducted
by the Ecuadorian Scientific Commission, ▊▊▊▊▊▊▊▊▊ and
Dr. Adolfo Maldonado, which reflect that the ecological "impacts
on [Ecuadorian] properties[] . . . [were] consistent with" the
farmer's complaints, and that the vast majority of those residing
in the affected areas were poisoned as a result of the spraying.
Pls.' SDMF ¶ 9; Pls.' Opp'n at 35.

    The DynCorp defendants' experts counter that the amount and
type of herbicide drift to which the plaintiffs were exposed did
not cause the alleged damage.  Dr. Andrew Hewitt, an expert in
the drift of aerial herbicides, concluded that "there . . . could
not have been any meaningful drift of Plan Colombia herbicide
onto the farms of any of the . . . test plaintiffs[.]"[1]  Defs.'
Mot. at 10; Defs.' Mot., Defs.' App. ("Defs.' App.") (Andrew
Hewitt Rpt. ("Hewitt Rpt.")) at 198.  Dr. Robert I. Krieger,

---

[1] The plaintiffs "dispute the Hewitt report because its
conclusions . . . are based on a controlled study . . . [which]
cannot be considered conclusive because of the variability of
several factors including the height at which spray is released
and the amount of spray released[.]"  Pls.' SDMF ¶ 2.

based upon his "background, training and experience in environmental, human and animal toxicology; risk characterization; and risk assessment" concluded that "[t]here is no scientific basis to conclude that the test plaintiffs' alleged injuries . . . and injuries to their livestock could have been caused by exposure to the Plan Colombia spray mixture." Defs.' App. (Robert I. Krieger Rpt. ("Krieger Rpt.")) at 210.

Accordingly, the defendants have moved for summary judgment based upon the plaintiffs' lack of expert testimony. The defendants argue that such testimony is necessary for two reasons. First, "the test plaintiffs' legal claims turn[] on medical and scientific knowledge that is beyond the ken of the average layman[.]" Defs.' Mot. at 1. Second, they argue that the plaintiffs can demonstrate causation -- an essential element of their claims in tort -- only by proffering expert evidence of the specific dose of herbicide drift to which plaintiffs were exposed for a duration sufficient to cause harm to them and their property. Defs.' Mot. at 19.

The plaintiffs oppose. They assert, among other things, that expert testimony demonstrating a dose-response relationship is not required to show that they were exposed to the Plan Colombia herbicide, Pls.' Opp'n at 5, that expert testimony is not required to show that the Plan Colombia herbicide caused injury to the plaintiffs' animals, fish, and crops, id. at 18,

that the aggregated eyewitness accounts of close temporal proximity between spraying events and subsequent damage obviate any need for expert evidence, id. at 15, and that in any event, Wolfson testified to a reasonable certainty that the plaintiffs' exposure to herbicides damaged them, id. at 11-12.

## DISCUSSION

"[T]he central purpose of the summary judgment device[] . . . is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999). Summary judgment is proper "when the pleadings and evidence show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Akers v. Beal Bank, 845 F. Supp. 2d 238, 240 (D.D.C. 2012) (quoting Fed. R. Civ. P. 56(a)). A dispute is "genuine" if a reasonable jury, given the evidence presented, "could return a verdict for the nonmoving party." Musick v. Salazar, 839 F. Supp. 2d 86, 93 (D.D.C. 2012). "'A fact is material if a dispute over it might affect the outcome of a suit under the governing law.'" Id. (quoting Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006)).

"'To survive a motion for summary judgment, the party bearing the burden of proof at trial . . . must provide evidence showing that there is a triable issue as to an element essential to that party's claim.'" Etheridge v. FedChoice Fed. Credit

- 7 -

Union, 789 F. Supp. 2d 27, 32 (D.D.C. 2011) (quoting Arrington v. United States, 473 F.3d 329, 335 (D.C. Cir. 2006)); accord Moore v. Hartman, 571 F.3d 62, 66 (D.C. Cir. 2009). Neither a "'[mere] scintilla of evidence[,]" Estate of Parsons v. Palestinian Auth., 651 F.3d 118, 123 (D.C. Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)), nor "'some metaphysical doubt as to the material facts[,]'" will suffice to defeat summary judgment. Harris v. Koenig, 815 F. Supp. 2d 26, 30 (D.D.C. 2011) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). Instead, the nonmovant must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotation marks omitted).

In considering a summary judgment motion, a court may not make credibility determinations, weigh evidence, or "draw[] . . . legitimate inferences from the facts[.]" Estate of Parsons, 651 F.3d at 123 (quoting Anderson, 477 U.S. at 255). Those functions are reserved for the jury. Id. Rather, a court accepts as true the nonmovant's evidence and draws "justifiable inferences . . . in his favor." Anderson, 477 U.S. at 255. "If the evidence presented on a dispositive issue is subject to conflicting interpretations, or reasonable persons might differ as to its

-8-

significance, summary judgment is improper."   Etheridge, 789 F.
Supp. 2d at 32 (internal quotation marks and alternations
omitted).   "[I]f undisputed facts point unerringly to a single,
inevitable conclusion, [however,] summary judgment [is]
warranted."   Keefe Co. v. Americable Int'l, 169 F.3d 34, 38 (D.C.
Cir. 1999) (internal quotation marks and alternations omitted).

    To prevail in a negligence action under District of Columbia
law, the plaintiff must show:   "(1) that the defendant owed a
duty to the plaintiff, (2) breach of that duty, and (3) injury to
the plaintiff that was proximately caused by the breach."
Hedgepeth v. Whitman Walker Clinic, 22 A.3d 789, 793 (D.C. 2011).
To prove causation in a toxic tort case, the plaintiff must show
general and specific causation.   Young v. Burton, 567 F. Supp. 2d
121, 138 (D.D.C. 2008).   That is, "the plaintiff must show that
the toxicant in question is capable of causing the injury
complained of (general causation) and must further prove that the
toxicant in fact did cause that injury in the present case
(specific causation)."   Young, 567 F. Supp. 2d at 138 (internal
quotations marks and alterations omitted); see also Reyes v.
Keith Mach. Corp., Civ. No. 09-5309(DRD), 2011 WL 2413666, at *3
n.1 (D.N.J. June 8, 2011) ("Absent 'proof of cause, there is no
connection between the injury complained of and the fault of
anyone.'") (quoting J.D. Lee & Barry A. Lindahl, Modern Tort Law:
Liability and Litigation, § 4.01 at 127 (rev. ed. 2000)).   The

-9-

plaintiff must first meet her burden to prove general causation.
Only then can the plaintiff offer evidence concerning specific
causation.  Raynor v. Merrell Pharm., 104 F.3d 1371, 1376 (D.C.
Cir. 1997).

In some cases, District of Columbia law requires plaintiffs
to establish causation in tort cases through expert testimony.
Hull v. Eaton Corp., 825 F.2d 448, 455 (D.C. Cir. 1987)
(collecting cases); Davis v. Bud & Papa, Inc., Civil Action No.
11-1001 (RC), 2012 WL 3195154, at *3 (D.D.C. Aug. 8, 2012).  "The
purpose of expert opinion testimony is to avoid jury findings
based on mere speculation or conjecture."  Washington v. Wash.
Hosp. Ctr., 579 A.2d 177, 181 (D.C. 1990).  Expert testimony is
required when "the subject presented is so distinctly related to
some science, profession, business or occupation as to be beyond
the ken of the average layman."  Hull, 825 F.2d at 455 (internal
quotation marks and citation omitted); accord Lasley v.
Georgetown Univ., 688 A.2d 1381, 1385 (D.C. 1997) ("To allow a
jury of laymen, unskilled in medical science, to attempt to
[determine causation without medical opinion testimony in a
medically complicated case] would permit the rankest kind of
guesswork, speculation and conjecture.").  Expert testimony is
not required if the question is not a "complex" one such that the
jury can determine causation without the aid of expert testimony
based on their own common sense and general experience.  Williams

v. Lucy Webb Hayes Nat'l Training Sch. for Deaconesses &
Missionaries, 924 A.2d 1000, 1003-04 (D.C. 2007); Int'l Sec.
Corp. of Va. v. McQueen, 497 A.2d 1076, 1080 (D.C. 1985) ("In the
absence of 'complicated medical questions,' the plaintiff's own
testimony, without need for supporting expert medical testimony,
will suffice to prove causation of injury." (quoting Jones v.
Miller, 290 A.2d 587, 590 (D.C. 1972)); see also Salem v. U.S.
Lines Co., 370 U.S. 31, 35 (1962).  Courts must apply these legal
principles to determine whether expert testimony is required on a
case-by-case basis.  Davis, 2012 WL 3195154, at *3.

I.   GENERAL CAUSATION

     The DynCorp defendants allege that general causation "turns
on medical and scientific knowledge that is beyond the ken of the
average layman[.]"  Defs.' Mot. at 1.  Certainly, whether a toxin
can cause the kinds of injuries the plaintiffs allege is a
question "distinctly related to some science" that requires
expert testimony.  See generally David H. Kaye, David E.
Bernstein & Jennifer L. Mnookin, The New Wigmore: Expert Evidence
§ 2.5 (2d ed. 2010); see also Wills v. Amerada Hess Corp., 379
F.3d 32, 46 (2d Cir. 2004).

     The defendants do not dispute that the plaintiffs have met
their burden in providing expert testimony on general causation
for the plaintiff's personal injuries.  The defendants do argue
that they are entitled to summary judgment as to the plaintiff's

claims for damages for injury to their crop, livestock, and fish.
The defendants' experts concluded that no "changing levels of
vegetation . . . in the immediate area of -- and in the weeks
immediately following -- the September and October 2002 Plan
Colombia spraying operations[]" took place, Defs.' App. (Barry
Evans Rpt.) at 201, and that no "scientific basis [supported the
conclusion] that the test plaintiffs' alleged injuries to their
livestock could have been caused by exposure to the Plan Colombia
spray mixture[,]" Krieger Rpt. at 210. Dr. Wolfson offered no
expert opinion on the plaintiffs' claims of injury to their
crops, livestock, and fish. Pls.' SDMF ¶¶ 25, 37. Because the
plaintiffs agreed that their sole expert witness would not be
offering any opinions regarding the plaintiffs' claims of injury
to their farm animals, fish, or crops, plaintiffs failed to meet
their burden to offer expert testimony to prove general causation
as to these injuries. Accordingly, the defendants' motion for
summary judgment will be granted as to the plaintiffs' damages
claims for injury to their crops, farm animals, and fish.

II. SPECIFIC CAUSATION

The defendants contend that they should also be granted
summary judgment with respect to the plaintiffs' personal
injuries experienced immediately after exposure to the Plan
Colombia herbicide ("acute injuries") and plaintiffs' increased
risk of developing cancer ("chronic injuries") because the

plaintiffs did not proffer any expert testimony that they "were exposed to injurious levels of the [Plan Colombia] herbicide[.]" Defs.' Mot. at 16. Stated simply, the defendants argue that the plaintiffs did not raise a triable issue of fact as to specific causation. The premises of their argument are that (1) the plaintiffs cannot establish specific causation without proffering expert testimony, (2) that the plaintiffs' proffered expert must opine as to the plaintiffs' level of exposure to the Plan Colombia herbicide, and (3) that the plaintiffs' expert did not provide such testimony. Although Dr. Wolfson testified generally as to the concentration of the glyphosate in the Plan Colombia herbicide, he did not offer any opinion as to the plaintiffs' dose or duration of exposure. Pls.' SDMF ¶ 16. Thus, the question is whether specific causation in this case can be established without expert testimony on the plaintiffs' level of exposure to the toxin.

In toxic tort cases, specific causation is usually established by an expert presenting "scientifically-accepted information about the dose-response curve for the toxin which confirms that the toxin can cause the health effects experienced by the plaintiff at the dosage plaintiff was exposed to." Young, 567 F. Supp. 2d at 128. A dose-response relationship is "'[a] relationship in which a change in amount, intensity, or duration of exposure to an agent is associated with a change -- either an

increase or decrease -- in risk of disease.'" McCallum ex rel. McCallum v. United States, No. Civ.A. 304CV442, 2005 WL 1048735, at *10 (E.D. Va. May 4, 2005) (quoting Fed. Judicial Ctr., Reference Manual on Scientific Evidence 390 (1994)). When a plaintiff seeks to establish specific causation through a dose-response relationship, "'[s]cientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiff's burden in a toxic tort case.'" Young, 567 F. Supp. 2d at 128-29 (quoting Mitchell v. Gencorp Inc., 165 F.3d 778, 781 (10th Cir. 1999) (quoting Wright v. Willamette Indus., Inc., 91 F.3d 1105, 1106 (8th Cir. 1996))).

In certain circumstances, however, a plaintiff may also meet his burden to prove specific causation in a toxic tort case by offering lay witness testimony showing "a temporal relationship between exposure to a toxin and subsequent adverse health effects." Young, 567 F. Supp. 2d at 128. A temporal relationship is sufficient to establish causation only where "the circumstances of the exposure and the timing of the illness [are] so compelling as to render further evidence of causation unnecessary[.]" Id. at 128.[2]

_____

[2] Cf. Moore v. Ashland Chem. Inc., 151 F.3d 269, 278 (5th Cir. 1998) ("In the absence of an established scientific connection between exposure and illness, or compelling circumstances . . . , the temporal connection between exposure to chemicals and an onset of symptoms, standing alone, is entitled to little weight in determining causation.").

-14-

A.    Acute injuries

Specific causation of plaintiffs' acute injuries may be
established through expert testimony or through lay testimony
establishing a temporal relationship between exposure to the
toxin and the acute injury.  Temporal evidence without expert
testimony may be sufficient to prove specific causation for acute
injuries where the symptoms from exposure to the toxin were
experienced immediately, or nearly so.  See McCallum, 2005 WL
1048735, at *11-12 (holding that evidence that symptoms known to
be associated with toxin poisoning exhibited three days after
exposure and eyewitness testimony that the plaintiff was exposed
to the toxin created a genuine issue of triable fact).  In G.C.
ex rel. Johnson v. Wyndham Hotels & Resorts, LLC, 829 F. Supp. 2d
609 (M.D. Tenn. 2011), the plaintiff's two-year-old daughter
ingested ant poison found in a resort guest room, and the
plaintiff brought suit for damages alleging that the defendants'
negligence caused the ingestion.  The plaintiff did not provide
expert testimony regarding causation.  Instead, she relied on her
own testimony that "soon after consuming the pesticide, [her
daughter] experienced breathing difficulties, stomach pain, and a
rash."  Id. at 612.  Based on this testimony, the court concluded
that the plaintiffs had offered sufficient evidence of causation
to avoid summary judgment.  Id. at 612-13.  As the Sixth Circuit
explains, where symptoms are experienced shortly after exposure

to a toxin, "[i]t does not take an expert to conclude that, under these circumstances, Defendants more likely than not are responsible for Plaintiffs' injuries." Gass v. Marriott Hotel Servs., Inc., 558 F.3d 419, 433 (6th Cir. 2009) (symptoms appeared within 15 minutes of exposure). Similarly, another court held that expert testimony was not required where "several individuals simultaneously become ill immediately upon exposure to strong noxious fumes, suffering dizziness, nausea, breathing difficulty, irritated eyes, and diarrhea." Wade v. Plantation Pipe Line Co., No. 2:05-CV-697-WKW, 2007 WL 1668815, at *3 (M.D. Ala. June 8, 2007). The court noted that although "[a]t some point, the causation between exposure to [the toxin] and a medical condition would be beyond the knowledge of an untrained person to deduce . . . , the immediacy of the reaction that these plaintiffs experienced and the fact that they all had similar reactions is sufficient to show causation." Id.

Here, the test plaintiffs offer lay witness testimony that shortly after the spraying, the witnesses developed symptoms. It is not beyond the jury's common sense to infer that the plaintiffs' acute injuries that occurred within hours of their alleged exposure to the Plan Colombia spray was caused by the spray.

The defendants also argue that because the plaintiffs' testimony is "contrary to a solid wall of objective data showing

that they were not in fact exposed to herbicide from any of the
aerial eradication operations[,]" the plaintiffs' exposure
testimony is insufficient to overcome a motion for summary
judgment. Defs.' Mot. at 22. "Judges may, under certain
circumstances, lawfully put aside testimony that is so undermined
as to be incredible." Johnson v. Wash. Metro. Area Transit
Auth., 883 F.2d 125, 128 (D.C. Cir. 1989), abrogated in part by
Belton v. Wash. Metro. Area Transit Auth., 20 F.3d 1197 (D.C.
Cir. 1994). The D.C. Circuit explains that judges are most
likely to remove a factual question from the jury "when a
plaintiff's claim is supported solely by the plaintiff's own
self-serving testimony, unsupported by corroborating evidence,
and undermined either by other credible evidence, physical
impossibility or other persuasive evidence that the plaintiff has
deliberately committed perjury." Id. Here, the plaintiffs'
testimony is disputed but the defendants do not argue that the
existence of contrary evidence makes the plaintiffs' accounts
incredible, that it is physically impossible that the plaintiffs
were exposed to the Plan Colombia herbicide, or that the
plaintiffs are lying. Thus, the plaintiffs' eyewitness testimony
is sufficient to create a triable issue of material fact
concerning what caused their acute injuries.

B.    Chronic injuries

However, expert testimony on specific causation is required
to create a triable issue of material fact about whether the Plan
Colombia herbicide caused plaintiffs' alleged chronic injuries.
Because the nexus between the plaintiffs' exposure and their
increased risk of cancer would not be obvious to the jury, expert
evidence is required to explain the underlying medical science
and avoid jury guesswork or speculation as to the issue of
causation.  See Wills, 379 F.3d at 46 ("As we have noted, the
causal link between exposure to toxins and other behavior and
[cancer] is sufficiently beyond the knowledge of the lay juror
that expert testimony is required to establish causation.").   In
light of the need for expert testimony on specific causation of
chronic injuries, lay witness testimony establishing a temporal
relationship is insufficient to meet the plaintiff's burden.
Johnson v. Arkema, Inc., 685 F.3d 452 (5th Cir. 2012) is
illustrative.   There, the plaintiff alleged that he suffered
acute and chronic personal injuries from exposure to a chemical.
The plaintiff sought to establish causation through testimony
that there was a strong temporal connection between his exposure
to the chemical and the onset of his symptoms.   The Fifth Circuit
held that since the plaintiff's acute injuries "are within those
limited circumstances where expert opinion is unnecessary[,]" the
district court erred in granting summary judgment to the

defendant regarding plaintiff's acute injuries. Id. at 471. However, the court of appeals agreed with the district court that the temporal relationship was insufficient to establish specific causation for the plaintiff's chronic injuries because those injuries developed years following the incidents. Id.; see also Cavallo v. Star Enter., 892 F. Supp. 756, 774 & n.46 (E.D. Va. 1995) (finding that temporal evidence is insufficient to prove that exposure to a toxin caused certain chronic injuries), aff'd in relevant part, rev'd in part, 100 F.3d 1150 (4th Cir. 1996).

The defendants move for summary judgment arguing that the plaintiffs "fail[ed] to proffer any expert testimony on other necessary elements of their causation claims." Defs.' Mot. at 5 n.5 (emphasis in original). If the argument is a reflection on causation of chronic injuries, however, Dr. Wolfson states in his expert report that "[t]he exposure of the plaintiffs to [the Plan Colombia herbicide], as a result of aerial spraying, very likely places them at a significant increased risk for the development of cancers in the future." Pls.' Opp'n, Ex. 8, Michael Wolfson Rpt. at 3. This is some expert evidence regarding causation of chronic injuries, even though Dr. Wolfson said in his deposition that he is offering no opinion on the dose or duration of the plaintiffs' exposure to the toxin. Wolfson Dep. 100:7-10; Pls.' SDMF ¶ 15. Because the plaintiffs have proffered some expert testimony on specific causation to support their claims that the

Plan Colombia herbicide has increased their risk for cancer, the motion for summary judgment will be denied as to this issue.[3]

## CONCLUSION AND ORDER

The plaintiffs have not proffered expert evidence as to general causation for injury to their fish, crops, and livestock. As to the plaintiffs' personal injuries, the plaintiffs' expert testimony on general causation is sufficient to survive summary judgment. Contrary to defendants' claim, the plaintiffs have offered expert testimony regarding the cause of plaintiffs' chronic injuries, and the plaintiffs' percipient witness testimony creates a triable issue of material fact as to specific causation of plaintiffs' acute injuries. Accordingly, it is hereby

ORDERED that the defendants' motion [256] for summary judgment be, and hereby is, GRANTED IN PART and DENIED IN PART. Judgment is entered for the defendants as to plaintiffs' claims for damages for injury to their crops, livestock, and fish. Defendants' motion is denied as to plaintiffs' personal injuries. It is further

---

[3] Defendants have voiced serious doubts as to whether Dr. Wolfson's causation opinion regarding chronic injuries, without testimony on the dose-response relationship, is reliable under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). However, the defendants note that the instant motion is not meant to attack the admissibility of Dr. Wolfson's proffered expert opinions. Defs.' Mot. at 5 n.5. As such, Dr. Wolfson's qualifications and the reliability and relevance of his expert opinions are not at issue in this motion.

-20-

ORDERED that the parties confer and file under seal by February 28, 2013 a proposed redacted version of this memorandum opinion and order that can be filed on the public docket.

SIGNED this 6th day of February, 2013.

_____

RICHARD W. ROBERTS
United States District Judge